GERMANIA IMPORTING CO. *v.* UNITED STATES (No. 520).[1]

1. THE MAKING OF PAPER.

To constitute a material paper, it is not necessary that the machine used in its manufacture should be known as a paper-making machine, nor that the material should contain glue, alum, and clay; the product determines its classification.

2. WRAPPING PAPER.

Material having the ordinary thickness of wrapping paper, with the appearance of wrapping paper and used as such, must be deemed not wood pulp but wrapping paper, and was dutiable under paragraph 402, tariff act of 1897, as paper not specially provided for.

United States Court of Customs Appeals, May 8, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24059 (T. D. 30991).

[Affirmed.]

*John Giblon Duffy (Joseph G. Kammerlohr* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in issue in this case was invoiced as "pack cellulose." Cellulose in the German language means wood pulp. It was classified under paragraph 402 of the act of July 24, 1897, as paper not specially provided for at 25 per cent ad valorem, and is claimed by appellants to be unbleached chemical wood pulp and dutiable under paragraph 393 of the same act at one-sixth of 1 cent per pound.

The sole question in the case is whether the article is paper or wood pulp. The material is of the ordinary thickness of wrapping paper, and presents a perfectly smooth surface on one side and has the appearance of wrapping paper. The evidence shows that it is used as such.

In Wagner's Chemical Technology paper is defined to be—

A thin felt of vegetable fibers, mechanically and chemically clarified, crushed, and torn into a pulp suspended in water. This pulp is spread equally in thin layers, drained, pressed, and dried into the compact substance we call paper.

This article would appear to answer this description. The testimony of numerous witnesses on behalf of the Government shows that the article is known as paper and sold as paper. The evidence on the part of the importer does not materially differ from that of the Government's witnesses, but the strength of the importer rests in the claim that this can not be called paper, first, because it is not made in a paper-making machine, and, secondly, because it does not

---

[1] Reported in T. D. 31595 (20 Treas. Dec., 1019).

contain glue, alum, and clay. A number of witnesses, however, were called by the Government who testified that the presence of these ingredients is not necessary, and indeed it would seem to be demonstrated by this sample that their presence is not necessary to make paper. The sample itself is enough to demonstrate that it answers all known definitions of paper as understood by the average person. The sample is firm, well adapted to the purpose of wrapping paper, and we have no doubt that it was so handled and sold by the importers.

George Staber, a member of the importing company, testified:

Q. In the course of the last two years have you ever had any customers come in and ask you for any samples of wrapping paper?—A. Yes; I suppose it happens every day.

Q. Did you ever show them this article along with other samples?—A. I show them a lot of things.

Q. Have you ever when they asked for wrapping paper showed them this material along with others?—A. No; I don't know; I can't say I have.

Q. You probably have, haven't you?—A. Maybe.

The witness, Hans Bayer, who was the manufacturer of this paper, was asked on cross-examination:

Q. Do you know by what process the smooth, shiny surface on one side of the merchandise is produced?—A. Yes; by a dry cylinder with very smooth surface.

Q. If so, describe the process.—A. When damp cellulose material is pressed onto the polished surface of the dry cylinder for the purpose of drying, the one side becomes smooth, the other side remaining rough.

Q. What is the purpose of giving the merchandise this smooth surface?—A. Because it pleases the eye.

*          *          *          *          *          *          *

Q. For what use is this imported merchandise made?—A. This produce having not yet undergone an improving process, can therefore be used in the manufacture of paper and as wrapping paper.

The ordinary dry commercial wood pulp is made by a machine similar to that which produces this except that both cylinders are felted, the purpose being to eliminate the water from the material in order to save freight in shipping. Obviously, the thicker the product can be left and this object obtained the greater the economy in production. The practice as to this material, however, is quite different. It is given a smooth surface on one side, is pressed to a thickness which makes it available for use as paper, and it is obvious that except in rare cases it would not be used for any other purpose than as paper, and the testimony convinces us of this fact.

But it is said that this is not paper, for the reason that it is not made in a paper-making machine. Originally paper was made by hand process. That some particular machine may make paper by a somewhat different process does not demonstrate that the product now before us for consideration is not paper.

In answer to an interrogatory directed to the same witness, Hans Bayer: "Is said machine, upon which said merchandise was made, a paper-making machine?" he replied:

This interrogation I can not answer, but according to my directions pack cellulose should be manufactured on a cellulose-drying machine, which is quite similar to a paper-making machine.

We think this testimony is stating the fact with moderation, and that it is so similar in fact that the product which it produces is in fact paper.

The decision of the Board of General Appraisers so classifying this product is *affirmed.*